*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* H. I. R. WARDIA, Minor.

UNPUBLISHED
April 14, 2025
11:30 AM

No. 370861
Macomb Circuit Court
Family Division
LC No. 2023-000047-NA

Before: YATES, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor child, HIRW, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication still exist and no reasonable likelihood they will be rectified in a reasonable amount of time) and MCL 712A.19b(3)(g) (failure to provide care and custody). We affirm.

## I. BACKGROUND

Respondent had two children prior to HIRW, EW and VT. Each child has a different biological father. On May 2, 2019, child protective proceedings for EW and VT were initiated, and the children were removed from respondent's care because VT was physically abused by respondent's boyfriend at the time, Michael Cottone, and respondent had untreated mental health issues. Both EW and VT were placed in the custody of their fathers. Even after Cottone physically abused VT, respondent married Cottone and had a child with him, HIRW, in January of 2021.[1]

On October 3, 2019, respondent was ordered as part of her parent-agency agreement to not have contact with Cottone; however, respondent violated that order on multiple occasions. On June 14, 2021, domestic violence by Cottone against respondent prompted police involvement, but respondent chose not to press charges. On or about August 24, 2021, respondent vandalized

---

[1] Cottone's parental rights were also terminated. He is not a party to this appeal.

Cottone's vehicle at his residence, leading to an altercation between respondent and Cottone that was witnessed by HIRW.

On September 22, 2021, a Children's Protective Services (CPS) worker conducted a family team decision meeting with respondent following the two instances of domestic abuse between respondent and Cottone. Respondent said that she was not on her prescribed medication and refused to say what medication she was on. During the meeting, respondent was aggressive, unstable, and threatened to shoot the CPS worker if HIRW were removed from her care. As a result, on the same date, the Department of Health and Human Services (DHHS) filed a petition for the removal of HIRW, alleging that respondent failed to provide HIRW with necessary care, subjected her to an unreasonable risk of harm, and that respondent's home was an unfit place for HIRW to live. Also on the same date, the trial court issued an ex parte order to remove HIRW from respondent due to a substantial risk of harm. Instead of taking HIRW to the Sterling Heights police station to meet with the DHHS as ordered by the trial court, respondent fled to Mexico. Respondent was apprehended on or around October 15, 2021, by border patrol.

On October 22, 2021, the petition for HIRW's removal was authorized. HIRW was placed with a foster family, and respondent's parenting time was suspended. The trial court found statutory grounds to exercise jurisdiction over HIRW under MCL 712A.2(b)(1), failure to provide necessary care causing a substantial risk of harm to the child's mental well-being, and MCL 712A.2(b)(2), respondent's home is an unfit home. Respondent was given a parent-agency agreement that required a psychological evaluation, a psychiatric evaluation, individual therapy, domestic violence classes, substance abuse classes, parenting classes, obtaining stable housing and employment, and communicating with her CPS worker. On March 30, 2022, respondent was granted supervised parenting time. Then, on July 5, 2022, respondent was granted unsupervised parenting time with HIRW during the day and at night after the trial court determined that she was complying with her parent-agency agreement. Finally, on March 15, 2023, HIRW was returned to respondent. However, HIRW was still a ward of the state, and respondent had to obtain the DHHS's permission before including another person in her parenting time with HIRW. Cottone still had his parental rights to HIRW at this time, but his visits with HIRW had to be supervised by the DHHS.

On March 19, 2023, just days after HIRW was returned to respondent, a foster-care worker learned that respondent allowed HIRW to visit Cottone without the DHHS's supervision. Cottone texted the worker a photograph of himself holding HIRW on his shoulders and a message that he was living with respondent. Respondent admitted that she allowed Cottone to live in her house in Hazel Park from March 13, 2023 to March 19, 2023. Respondent denied that she or HIRW lived at the house at that time, and instead claimed that they lived in a house in Sterling Heights, but respondent had not informed the DHHS of any change of address. Respondent also allowed her friend to take HIRW without the DHHS's approval. Thus, on April 2, 2023, less than three weeks after HIRW was returned to respondent, HIRW was removed from respondent's care again. On April 8, 2023, respondent was voluntarily hospitalized for suicidal ideation.

The guardian ad litem's (GAL) second amended petition was authorized on April 20, 2023. A hearing to terminate respondent's parental rights was held on March 13, 2024, and March 20, 2024. Respondent testified that in May 2023, she became the guardian of Cottone due to his physical and mental health issues as well as his substance abuse. She then petitioned for a PPO

against Cottone on June 27, 2023, after another incident involving police. She terminated her guardianship of Cottone in October 2023 because he continued to abuse substances and refused to attend therapy or take his medication. Respondent claimed that she was only in contact with Cottone to help him and because she felt sorry for him. She was aware of the court order to not have contact with him. The trial court found that statutory grounds for termination existed under MCL 712A.19b(3)(c)(*i*) and (g). Respondent continued to interact with Cottone despite a court order and a PPO. Cottone posed a safety threat to HIRW, and proper care of HIRW was irreconcilable with the presence of Cottone in respondent's life. The trial court also found that termination of respondent's parental rights was in HIRW's best interests. HIRW had spent most of her life with her foster parents who were willing to adopt her. Respondent had placed HIRW at risk by taking her to visit Cottone and had not fully complied with her parent-agency agreement regarding Cottone, providing the DHHS with accurate information, or receiving approval for HIRW's caregivers. On April 19, 2024, the trial court terminated respondent's parental rights to HIRW.

This appeal followed

## II. STATUTORY GROUNDS

Respondent argues that the trial court clearly erred in finding that statutory grounds existed to terminate her parental rights because she had complied with her parent-agency agreement, the court failed to consider that her medication caused her issues prior to 2023, and the GAL mischaracterized facts. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333; 985 NW2d 912 (2022) (quotation marks and citation omitted). This Court reviews for clear error a trial court's finding that statutory grounds exist for termination. *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 272-273; 976 NW2d 44 (2021) (quotation marks and citation omitted). This Court need not consider additional grounds for the trial court's decision if termination was supported by at least one statutory ground. *In re Jackisch/Stamm-Jackisch*, 340 Mich App at 333-334.

On April 19, 2024, the trial court issued an opinion and order finding statutory grounds to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*) and (g).

MCL 712A.19b(3) provides:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> \* \* \*

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The conditions continue to exist when the totality of the evidence supports a finding that there has not been a meaningful change in the conditions that led to the trial court taking jurisdiction over the child. *In re Lombard*, __ Mich App __, __; __ NW3d __ (2023) (Docket No. 367714); slip op at 5.

It is undisputed that more than 182 days have elapsed since the initial dispositional order in this case. MCL 712A.19b(3)(c)(*i*). The initial dispositional order was entered on March 15, 2022. The hearing to terminate respondent's parental rights was held on March 13, 2024, and March 20, 2024. The order terminating her rights was entered on April 19, 2024.

The domestic violence and relationship between respondent and Cottone that led to the initial removal of HIRW continued to exist, and it was unlikely to be rectified within a reasonable amount of time as respondent maintained a relationship with Cottone at every possible opportunity. Cottone's parental rights to HIRW were terminated because he posed a risk to HIRW's safety and wellbeing. Yet respondent continued to engage with Cottone, despite being ordered not to by the trial court, obtaining two PPOs against him, and engaging in services including domestic violence classes and individual therapy. Respondent even went so far as to become a guardian over Cottone, risked her parental rights to HIRW after she had just regained custody over HIRW by allowing him to live in her house, and allowed Cottone to stay at a sober house she ran. Respondent also permitted Cottone to visit HIRW without the DHHS's supervision.

Respondent argues that the trial court erred in finding statutory grounds to terminate her parental rights because she complied with her parent-agency agreement. However, respondent also admits on appeal that she had not complied with certain terms of the agreement that required her to address the impact of her relationship with Cottone, including: discontinue contact with non-supportive partners that put herself and HIRW at risk of substantial harm and comply with the terms of her PPO against Cottone. Respondent argues on appeal that she was no longer romantically involved with Cottone but instead was embracing the principles of sober living of forgiveness and making amends and was trying to help him improve his life. Her reasoning for continuing to choose Cottone over HIRW is irrelevant, however. Respondent's parent-agency agreement required that she not have contact with Cottone, but she continually violated that order as well as the PPOs that she sought out against him following domestic-violence incidents. Respondent gave no indication at trial that she was taking steps to remove Cottone from her life. Though her relationship with Cottone was discussed in respondent's therapy, respondent did not appear to change how she interacted with him. Viewing respondent's behavior in its totality, she had not benefited from her parent-agency agreement.

Respondent also argues on appeal that her prescribed Lexapro negatively impacted her behavior prior to her April 2023 voluntary hospitalization and that the trial court failed to account

for this. However, respondent was prescribed a new medication following her hospitalization and continued to involve herself in Cottone's life after her medication had changed, including obtaining a guardianship over him in May 2023. In addition, on respondent's June 27, 2023 PPO application against Cottone, she listed an incident that occurred between them in May 2023.

Respondent also alleges that the GAL made inaccurate factual statements that prejudiced respondent. Upon review of the record, the GAL did not mischaracterize the facts as respondent claims. First, respondent argues that Dr. Stephanie Riolo, respondent's psychiatrist from the Judson Center, could not testify about the relationship between HIRW and respondent because the three videos of respondent's parenting times with HIRW that Dr. Riolo reviewed were not available to the GAL. However, the GAL argued against the qualification of Dr. Riolo as an expert on HIRW's attachment to respondent because Dr. Riolo had never met HIRW or performed an evaluation of HIRW and respondent. Dr. Riolo testified that all of the information she had was self-reported by respondent or provided by respondent's attorney. The trial court thus ruled that Dr. Riolo could testify as to her treatment of respondent and her expertise on attachment and child psychiatry in general, but not as to HIRW specifically. Second, respondent argues that the GAL "consistently said that to witnesses that [respondent] continues to be with Cottone" and this is inaccurate because respondent was engaging with Cottone for his recovery and that the GAL stated that respondent "admitted to everything." However, the GAL did not state that respondent and Cottone were in a romantic relationship or that respondent had admitted that HIRW was in her father's presence in March 2023. The GAL stated that respondent "continues to be with" Cottone, which could be construed romantically or platonically. She also stated that respondent had lied about Cottone staying at her house. The trial court did not mischaracterize any of these facts in its opinion terminating respondent's parental rights.

Therefore, the trial court did not clearly err in finding that the volatile relationship between respondent and Cottone that led to the adjudication had not meaningfully changed and was unlikely to do so within a reasonable amount of time given that HIRW was 10 months old when first removed from respondent's care but was three at the time of termination. Accordingly, based on our review of the record, we are not definitely and firmly convinced that the trial court erred when it found by clear and convincing evidence that termination of respondent's parental rights was appropriate under MCL 712A.19b(3)(c)(*i*).[2]

## III. BEST INTERESTS

Respondent argues that the trial court erred in finding that termination of her parental rights was in HIRW's best interests because her interactions with Cottone were undertaken with HIRW's best interests in mind. We disagree.

This Court reviews for clear error a trial court's decision that termination is in a child's best interests. *In re Jackisch/Stamm-Jackisch*, 340 Mich App at 333. "A finding of fact is clearly

---

[2] Because only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, we need not address respondent's arguments related to MCL 712A.19b(3)(g). *In re Jackisch/Stamm-Jackisch*, 340 Mich App at 333-334.

erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*.

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014), citing MCL 712A.19b(5). Whether termination is in the children's best interest must be established by a preponderance of the evidence. *Id.* at 733. The trial court should consider all of the evidence when determining whether it is in the child's best interests to terminate parental rights. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). When determining if termination is in a child's best interests, the trial court may consider the bond between the child and the respondent, the respondent's parenting ability, the child's need for stability and permanency, and the advantages of the child's current placement. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). The trial court may also consider any history of domestic violence, the respondent's compliance with their parent-agency agreement, the respondent's visitation history with the child, the child's well-being in their current placement, and the potential for adoption. *White*, 303 Mich App at 714. A best-interests analysis should focus on the child, not the respondent. *In re MJC*, __ Mich App __, __; __ NW3d __ (2023) (Docket No. 365616); slip op at 9.

Respondent's motivations for her actions are not a relevant factor in determining HIRW's best interests because the focus of this analysis is on the child. Respondent and HIRW had a bond and respondent had shown appropriate parenting skills during her parenting times, but respondent also kidnapped HIRW when she fled with her to Mexico, allowed people not approved by the DHHS to interact with her, and brought HIRW to visit Cottone despite knowing that supervision by the DHHS was required for Cottone to spend time with HIRW. Days after HIRW was returned to respondent's care in March 2023, HIRW either lived in the same house as Cottone or was immediately taken to an unfamiliar home in Sterling Heights. Staying with Cottone indicates that respondent is unable to provide HIRW with safety, and living in Sterling Heights for approximately a week indicates a lack of stability. As discussed above, respondent partially complied with her parent-agency agreement, but had not benefited. Despite the history of domestic violence between respondent and Cottone and Cottone's abuse of VT, respondent continued to interact with Cottone in the face of no-contact orders, her parent-agency agreement, and PPOs that prohibited this behavior. HIRW needed permanency and stability, which was provided to her by her foster parents with whom she resided for nearly her entire life (three years). HIRW was bonded with her foster parents, she was thriving under their care, and they were willing to adopt her. In light of this evidence, we conclude that the trial court did not clearly err by finding that it was in HIRW's best interests to terminate respondent's parental rights.

Affirmed.

/s/ Christopher P. Yates
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney